Judge Underwood,
delivered the opinion of the court.
Young filed a hill against Jesse and Elijah Davis, with a view to compel them to relinquish to him their title or claim to a parcel of land, to which Young alleged he had the best title coupled with possession, Young relied on an entry and patent, in the name of Charles Chinn. The Davises not admitting the validity of Young’s title, relied on a pre-emption certificate entry and patent, in the name of Jesse Davis, and insisted, that the possession of the land was with them. Jesse Davis having died, the suit was revived against his representatives. The court decreed to Young thirty-nine acres of land by metes and hounds and directed a conveyance. The Davises have appealed,
The complainant Young made no effort to establish the validity of the entry under which he claimed. His right to recover, must therefore, depend exclusively upon the patent connected with his alleged possession. Upon inspection, it will be seen that the patent to Davis is older than that to Chinn. It is said in one of *166 the briefs, that this is a mistake in transcribing the recoid and an agreement is spoken of, by which the mistake was to be corrected by substituting a copy of the patent from the register’s office. No such copy has been filed. The faijure, is a strong indication, that the fact does not warrant the suggestion of a mistake. We therefore take it, that the legal title is in Davis. As the complainant failed to establish an equity to overreach Davis’ title, we can perceive no ground on which the decree can be sustained. ’ Young’s title to the thirty-nine acres in controversy, accrued by a deed from the devisee of the patentee, executed in 1812. The Davises were in possession of the said thirty-nine acres,, many years previous to that time. Young’s first purchase from Elijah Chinn, is evidenced by a deed bearing date in 1802. This deed calls for Davis’ line, thereby indicating very clearly, that Davis’ land extended to and bound upon Young’s first purchase. That Davis claimed the land and was in fact possessed up to-the time of Young’s first purchase, is clearly manifested by the evidence. The compromise line made or agreed on with Rawley Chum, although his authority to bind Elijah Chinn, is not proved, tends to show the boundary within which Davis claimed, and to which he was actually possessed. The proof, however, is conclusive, that the defendants and those under whom they claim, have had possession within the con/liction between the two patents ever since 1798. This possession extended at least to the line of Young’s deed of 1802, which calls for Davis’ line. Young’s possession was limited by the boundary of his deed of 1802, until his purchase in 1812. It was not until after his purchase in 1812, that he entered on and took possession of any part of the thirty-nine acres. It does not appear that the patentee Chinn, or Young’s vendor either, ever had actual possession of the land in controversy, by entry on it or on any part of the tract of five hundred acres granted to Chinn. Young’s suit was instituted in 1814, at a time when, from the evidence, he might have been removed by writ of forcible entry. We perceive nothing in the possession acquired by that entry under a junior grant, which can justify sustaining his bill and quieting his possession. Nor do we regard the purchase made by Elijah Davis from Chinn as operating to the prejudice of Davis’ prior possession and claim. That purchase did not impose an obligation on Davis, to surrender his pre-ex *167 isting rights, and to decline bringing the patent to Davis and possession under it, in competition with the title derived from the patent to Chinn. We are therefore of opinion upon the merits of the controversy, without noticing other points, that the complainant’s bill should have been dismissed with costs.
Wicklijfe and Woolley, for appellants; Hardin and Crittenden, for appellee.
Wherefore, the decree of the circuit courtis reversed, and the cause remanded for a disposition to be made of it in conformity to this opinion.
The appellants must recover costs.
Benjamin Hardin, as counsel for Young, presented the following petition for a re-hearing.
The undersigned counsel on the part of Young, would respectfully ask of this honorable court, a hearing of the cause, or more properly speaking, to take back the opinion given, and direct a re-argument.
The facts of the cause are substantially, as follow: •Charles Chinn obtained a patent for three hundred acres of land, dated in January, 1786, and died in 1787, but before his death, lie made a will and devised said land to Elijah Chinn. In 1784, John Young settled on a tract of the land under an executory contract with Chinn, and has continued io occupy the same ever since.
.. A few years after the contract, he got a deed for a part, hut, befo! e that time, whether his purchase was meted and bounded does not appear.
-Davis had a pre-emption of four hundred acres, the patent issued March, 1786, as now corrected by a certified copy; the date in the record is March, 1785, and the tenth year of the commonwealth, which shows there is some mistake on the face of it.
Davis settled on his claim about twenty-five or six years before the suit was commenced, but out side of the interference between the claims. Davis and Raw’ley Chinn divided the interference bewteen the three .hundred acres belonging to Elijah Chinn, and the two hundred acres belonging to Davis, but Rawley had no authority to make such an arrangement for his brother, the owner of the land.
*168 In 1829, Young purchased out the residue of Chinn’s claim, wliicb included a small piece belonging to Elijah Davis, who now claims the two hundred acre pre-emption, but, before Young got a deed, he agreed to let Elijah Davis have a part of his purchase, to include his farm, and then Chinn made both of them deeds. Young and Davis agreed on the lines and corners. Davis never occupied a foot out of the agreed lines, and Young took possession of the land up to the agreed lines; see the depositions of YVilson L. Davis, William Duncan and others.
In 1814, Davis kept giving out in speeches, that he owned Young’s part of the purchase (to-wit: the last, purchase) under his pre-emption claim. Young filed a bill, not to secure himself in the possession, but to make him, Davis, stop talking about the claim, and setting up title to it, because it cheapened the land of Young and injured its value if he chose to sell it. Davis in his answer,says, that he is in the possession; acknowledges that he claims title to the land, and so gives out in speeches. The only question is, who is in possession? The proof is conclusive, that Young was in possession of the whole land, up to Davis’ purchase from Chinn.
First, the agreeing upon the boundary by Young and Davis, is an evidence that Young took possession up to the lines of Davis’ purchase, and that Davis agreed thereto.
Secondly', Young in fací, entered .upon it, sawed timbers and planted tobacco.
Thirdly, Young lived on Chinn’s claim, and when he made the last purchase; it was then but one claim, and the line between the first and last purchase ceased and his possession extended up to Davis’ fence.
It cannot, be objected that Davis might have turned Young off by a writ of forcible entry and detainer.
First, because Chinn by his tenant, Young, entered Upon his whole claim in 1791, for he entered under an executory contract, and was a tenant of Elijah Chinn. The division line between Rawley7 Chinn and Davis did not affect the possession of Elijah Chinn, which spread over his whole claim when Young first entered on it, because Raw Icy Chinn had no interest in the land or authority from E. Chinn to do what he did.
*169 Secondly, the writ would not lie, because the entry was not on the actual possession of Davis.
Thirdly, there is no such an exception in the tute, and if Davis had turned Young out by said writ it was a defence, is answer to Young’s claim of possession, which he ought to have set up in his answer, and having filed his last answer eight or ten years after Y-oung sowed turnips and tobacco on it; and not having mentioned the tact, it is conclusive, it did then exist, and after that time, it was too late, but moreover, what puts it out of all -controversy, is, that Isaac Hamer, the surveyor of Nelson county, in one of the depositions taken November, 1818, after going'upon the ground, swears that Davis’ possession did not, at that time, extend beyond his purchase from-Chinn.
From the foregoing considerations, and because the court heard the argument upon an inaccurate copy of tiie record it is confidently hoped a re-argument will be directed.
Upon consideration of •the petition for a re-hearing, Judge Underwood delivered -the following opinion of ihe court.
In-consequence of the return made to the certiorari which issued in 1829, confirming the correctness of the original record and the delay in having what is now called a correct copy of Davis’patent, filed until after the opinion was delivered we have deemed it proper to overrule the petition for a re-hearing. But as it may be, that'Chinn’s grant is eldest, we do hereby direct that the opinion delivered shall not conclude the parties as to the date of the patent, and that they, or either of them, may-institute any action-at law without being prejudiced by anything contained in the opinio» delivered.